613 P.2d 307

**R. G. ROTH CONSTRUCTION COMPANY, Petitioner Employer,**

**and**

**Mission Insurance Company, Petitioner Carrier,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Lawrence Albers, Respondent Employee.**

**No. 1 CA-IC 2168.**

Court of Appeals of Arizona, Division 1, Department C.

May 6, 1980.

Rehearing Denied June 16, 1980.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. A. by J. Victor Stoffa, Phoenix, for petitioner employer and petitioner carrier.

Calvin Harris, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Gorey & Delaney by Edgar M. Delaney, Phoenix, for respondent employee.

## OPINION

HAIRE, Judge.

On this review of the respondent Commission's award entered in a workmen's compensation proceeding, the sole issue is whether the Commission's hearing officer correctly determined the extent of the second carrier's liability in a fact situation involving successive scheduled injuries. The petitioning carrier was the insurer at the time of the second scheduled injury, and contended that its liability for loss of earning capacity benefits should have been determined upon a consideration of the separate physical functional disabilities resulting from the successive injuries. We reject the carrier's contention in that regard.

The facts pertinent to the issues raised in this review are essentially without dispute. Claimant's initial injury occurred in 1961, and resulted in a scheduled permanent disability award entered in 1962 for a 10% loss of function of the right leg. After the condition became stationary, claimant was awarded scheduled permanent partial disability wage benefits in the total amount of $1,675.95. This award resulted from the application of the statutorily presumed loss of earning capacity for this particular scheduled injury. In actuality, the claimant continued working without apparent loss of earnings.

Claimant's second scheduled injury occurred in 1975. In April of 1978, after the second injury became stationary, the Commission entered its award finding that claimant had sustained a 15% functional loss of the left leg, which when combined with the prior 10% functional loss of the right leg, mandated that claimant's present loss of earning capacity be determined on an unscheduled basis. See *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971). Pursuant to A.R.S. § 23–1047, the Commission entered its order finding that claimant had sustained a 29.46% loss of earning capacity. Although neither party disagreed with the Commission's unscheduled treatment of the second injury, both requested a hearing. The claimant con-

tended that the loss of earning capacity had been set too low. The carrier contended that the loss of earning capacity had been set too high. In addition, the carrier contended that it should not be held liable for claimant's entire loss of earning capacity, but rather, that it "should be liable solely for 60% of any benefits payable since this is the proportion of the total disabling condition which the 15% scheduled left leg for which it [the second carrier] is liable bears to the entire condition, including the prior 10% right leg for which it is not liable."

After subsequent hearings, the hearing officer entered an award which found a considerably greater loss of earning capacity for the claimant, and rejected completely the carrier's contentions relating to the method of computing the extent of the carrier's liability for the claimant's total loss of earning capacity.[1]

The resolution of the issue presented on this appeal is governed by A.R.S. § 23–1044 E, which provides as follows:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

If the word "disability" as used in § 23–1044 E means physical disability or impairment, then the hearing officer erred in not considering the extent of claimant's physical impairment resulting from the first injury as it existed at the time of the subsequent injury. On the other hand, if the word "disability" as used in § 23–1044 E means earning capacity disability, then the carrier's contention is clearly erroneous.

Although there may have existed considerable confusion in Arizona law as to the interpretation of § 23–1044 E prior to the Arizona Supreme Court's opinion in *Als-*

*brooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), hopefully that confusion has now been eliminated. After a thorough discussion and consideration of the question of the meaning of the word "disability" in § 23–1044 E, the court concluded:

"We hold that when the statute [§ 23–1044 E] says 'disability,' it means earning capacity disability . . . ." 118 Ariz. at 484, 578 P.2d at 163.

As so interpreted, A.R.S. § 23–1044 E now effectively reads as follows:

"In case there is a previous [earning capacity] disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of [earning capacity] disability for a subsequent injury shall be determined by computing the percentage of the entire [earning capacity] disability and deducting therefrom the percentage of the previous [earning capacity] disability as it existed at the time of the subsequent injury." (Added words in brackets).

Applying this statute to the facts of this case, the hearing officer found that claimant suffered an earning capacity disability after the second injury totalling 59.298%.[2] In order to determine the extent of the second carrier's liability, the statute requires that there be deducted from this 59.298%, the percentage of the previous earning capacity disability as it existed at the time of the subsequent injury. Here the hearing officer encountered analytical difficulties. As a factual matter he found "that all of the [claimant's] present reduction in earning capacity is due to the limitations created by the [second] injury. . . ." He stated the problem as follows in finding 22:

"22. The problem encountered in attempting to deduct applicant's previous earning capacity disability from the $326.14 figure is that applicant had no

---

1. No issue has been raised on this review concerning the hearing officer's factual determination of the claimant's total loss of earning capacity.

2. The hearing officer actually expressed his findings in dollar amounts. For ease of discussion in the terms used by the statute, we have converted this dollar amount to a percentage.

actual loss of earning capacity due to the first injury. But if applicant had no loss in earning capacity due to the first injury his second injury would not be an unscheduled injury but would rather remain a scheduled injury. The only reason that applicant's present injury is considered a [un]scheduled injury is because it is *conclusively* presumed that applicant sustained a loss of earning capacity due to his first industrial injury. See *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971). The question then becomes how much is applicant conclusively presumed to have lost due to his first industrial injury when the evidence is clear that he suffered no actual loss in earnings due to that first injury?"

■ Faced with this dilemma, the hearing officer concluded that in the absence of facts showing an actual loss of earning capacity, the conclusively presumed loss of earning capacity where one scheduled injury follows a prior scheduled injury must be measured by the amount of permanent benefits previously paid as a result of the initial scheduled injury, here $1,675.95. His award provided that this amount would be prorated over the claimant's remaining life expectancy (276 months from the date the second injury became stationary), and the prorated monthly amount then be deducted from the monthly loss of earning capacity payments due from the second injury carrier.[3]

We can understand the carrier's consternation with the resulting award. There appears to be some basic inequity in applying the *Ronquillo* conclusive presumptions to a fact situation of this nature, thus requiring that the second injury be treated as unscheduled, when in actuality the fact situation reveals that no actual loss of earning capacity resulting from the first injury existed at the time of the subsequent injury. The result is that A.R.S. § 23–1044 E is applied so as to cause the second scheduled injury to become "unscheduled", thereby substantially increasing the second carrier's exposure to liability, yet at the same time effectively depriving the carrier of the protection obviously envisioned by the legislature in enacting § 23–1044 E.

The carrier's response to this unhappy state of affairs is an attempt to persuade this Court that the disability referred to in A.R.S. § 23–1044 E is not an earning capacity disability, but rather a physical disability. If this approach were utilized, the extent of the carrier's liability in the pending proceeding would be reduced substantially. Even if we were persuaded by the logic of the carrier's arguments in this regard, we would be required to effectively overrule the Arizona Supreme Court's recent opinion in *Alsbrooks, supra*. This we are unable to

**3.** In his finding no. 24, the hearing officer provided:

"24. It appears to this Hearing Officer that the most reasonable manner in complying with Section 23–1044 E, is to deduct the conclusively presumed loss of earnings figure of $1,675.95 from the the loss of earnings due to applicant's second injury in increments over applicant's expected remaining life since this $1,675.95 figure is a figure which the legislature has conclusively presumed to reflect applicant's total loss of earnings throughout his entire life. In so doing this Hearing Officer takes judicial notice of the United States 1968 Life Tables as shown in Volume 18, of the *Arizona Revised Statutes*, and notes that as of May 1977 (the date from which applicant's monthly payments from the above named defendant insurance carrier are to run) applicant was a white male of the age of fifty and had a life expectancy of twenty-three years. Since there are two hundred seventy-six months in twenty-three years, the de-

duction of $6.04 per month for the remainder of applicant's expected life span would result in the deduction of the total amount of conclusively presumed loss of earnings attributable to his first injury from his total loss of earnings due to his second injury throughout his remaining expected life span."

Adopting the hearing officer's basic reasoning, we note that logically the proration should have been based on the claimant's life expectancy from the date that the first scheduled injury became stationary, rather than from the date the second injury became stationary. Since such a computation would have resulted in a further lowering of the amount the second injury carrier would be allowed to deduct from its continued liability, the hearing officer's present calculation actually inures to this carrier's benefit. As no cross-petition for review has been filed, we are not required to set aside this award for this miscalculation.

do. *McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968). Likewise, and for the same reasons, we are unable to overrule the conclusive presumptions established by *Ronquillo*.

 Given the premise that the hearing officer was required to enter an unscheduled award in this matter, and that factually no loss of earning capacity resulting from the first injury existed at the time of the second injury,[4] we find no error in the hearing officer's award prejudicial to the petitioning carrier.

The award is affirmed.

CONTRERAS, P. J., and JACOBSON, J., concur.

---

4. Notwithstanding *Modern Industries, Inc. v. Industrial Commission*, 125 Ariz. 283, 609 P.2d 98 (App.1980), it is our opinion that where the initial industrial injury is scheduled, *res judicata* or finality principles would not preclude a hearing to determine factually the extent at the time of the second injury of the claimant's actual loss of earning capacity resulting from the first scheduled injury.