692 P.2d 297

**Richard HOPPIN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Preston Insulation, Respondent Employer,**

**Western Fire Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 3080.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 30, 1984.

Reconsideration Denied Oct. 16, 1984.

Review Denied Dec. 18, 1984.

Rabinovitz, Dix & Rehling, P.C. by Charles G. Rehling, II, Tucson, for petitioner.

Sandra A. Day, Chief Counsel, Phoenix, for respondent Indus. Com'n of Ariz.

Slutes, Browning, Sakrison & Grant, P.C. by Kathleen B. Corey and James M. Sakrison, Tucson, for respondent Employer and respondent Carrier.

## OPINION

HAIRE, Judge.

The issues raised in this review of an award entered in a workmen's compensation proceeding concern the standard to be used in determining the petitioning claimant's compensable loss of earning capacity where the claimant's overall loss of earning capacity has resulted from the combined effects of an industrial injury and an unrelated disease, multiple sclerosis. The facts, taken from the administrative law judge's findings and from the record, and stated in a light most favorable to the administrative law judge's resolution of the issues are as follows.

At the time of the industrial injury in October 1979, claimant had been employed by the respondent employer for approximately ten years as a salesman of industrial materials to plumbing and heating contractors. In 1977 he was first diagnosed as having multiple sclerosis. By the time of the industrial injury, physical disabilities caused by the multiple sclerosis were adversely affecting his job performance and consequently creating considerable problems for his employer. His speech was slurred and accordingly there were complaints of drunkenness. Also, people could not understand him on the telephone. His handwriting was deteriorating, and he had vision difficulties (diploplia) that created reading problems. Additionally, he had some difficulty in walking because of poor balance relating to ataxia. The employer was concerned about the effect of the multiple sclerosis on claimant's sales ability, and although it was evident that something would have to be done, nothing had been said which indicated to claimant that his employment would be terminated, and in fact there is no testimony indicating that any definite decision had been made in that regard.

Against this background, in October 1979 claimant injured his back while loading insulation into his employer's truck. This

back injury eventually resulted in surgery. When claimant attempted to return to his employment about four weeks after surgery and before he had been given an employment release by his doctors, he was told that while he was out because of his back injury, someone else had been hired to take his place. Claimant has not been gainfully employed since the industrial injury, although it appears that he has diligently sought employment.

In December 1981, slightly over two years after the injury, claimant's condition relating to the industrial injury became stationary with a rated 5% permanent partial physical impairment of the whole man. The multiple sclerosis did not initially cause the industrial injury, nor was the multiple sclerosis aggravated or accelerated by the industrial injury. Further, the multiple sclerosis has not impeded or affected claimant's recovery from the industrial injury. From a functional standpoint, and considering only the conditions resulting from the industrial injury, the major restrictions placed on claimant involve lifting. All doctors agreed that claimant should not lift more than 30 to 40 pounds on occasion and not repetitively lift more than 15 pounds. He should not be in any one position for long periods, but should have changes of position between sitting, standing and walking. He could work an eight hour day, 40 hour week, with occasional bending, stooping and squatting. He could also reach above his head, and could use his feet in operating the foot controls of a motor vehicle.

In due course, pursuant to A.R.S. § 23–1047 the Commission administratively determined that claimant had incurred a 7.93% loss of earning capacity as a result of the industrial injury, and issued its award for compensation benefits in the amount of $54.54 per month. The claimant timely requested a hearing which was held in April of 1983. At that hearing, evidence was presented to the effect that subsequent to the industrial injury, claimant's speech and eye conditions relating to his multiple sclerosis had progressively worsened. Additionally, because of physical fatigue resulting from the multiple sclerosis, claimant would not be able to work more than five to six hours per day, five days per week. He could no longer "take the heat" and his doctor stated that claimant should not work outside in hot weather. He had developed some "spasticity" in the left limbs. He would not be allowed to climb because of imbalance problems. Additionally, ataxia plus hemiparesis would prevent him from performing any tasks involving fine motor coordination.

After considering the evidence and post-hearing memoranda filed by the parties, the Commission's administrative law judge entered a decision increasing the loss of earning capacity award to 12.23%, amounting to a monthly award of $84.08. Although the factual foundation and legal analysis applied by the administrative law judge in arriving at his decision and award are not as artfully stated as might be desired, it appears that the administrative law judge, in considering the disabling effects of claimant's previous disability, multiple sclerosis, determined that claimant was not entitled to compensation for the disabling effects of the multiple sclerosis. It is clear that the administrative law judge's intention was to eliminate from his determination of claimant's loss of earning capacity any disability [1] resulting from the multiple sclerosis, including such disability as it existed at the time of the industrial injury as well as any additional disability which might have developed after the industrial injury due to the progressive nature of multiple sclerosis. Accordingly, the administrative law judge's loss of earning capacity award to claimant was based upon employment which was testified to be "reasonably available" to the claimant, solely taking into consideration the residual effects of the industrial injury, and eliminating any limitations resulting from the multiple sclerosis.

Claimant has requested review of the loss of earning capacity award by special

1. The word "disability" as used in this opinion    means earning capacity disability.

action filed in this court pursuant to Rule 10, Rules of Procedure for Special Actions, raising the following issues:

"1. Did the Administrative Law Judge apply the proper test for loss of earning capacity, as enunciated in *Dean*, and most recently by our Supreme Court in *Zimmerman?*

"2. Did the Administrative Law Judge properly consider the effect of a prior disability on loss of earning capacity in accordance with A.R.S. Sections 23–1044D and E?"

We first consider claimant's contentions concerning subsections (D) and (E) of A.R.S. § 23–1044. These subsections read as follows:

"(D) In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to *any previous disability*, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

"(E) In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability *and deducting therefrom the percentage of the previous disability* as it existed at the time of the subsequent injury." (Emphasis added).

█ The requirement in A.R.S. § 23–1044(D) that in establishing a claimant's loss of earning capacity "consideration shall be given ... to any previous disability" does not require that compensation for the previous disability be included in the loss of earning capacity award. In fact, as further explained in subsection (E), the percentage of the previous disability as it ex-

isted at the time of the subsequent industrial injury is to be excluded in determining the final amount of the injured claimant's loss of earning capacity award.

Historically, the Arizona courts have held that the "previous disability" referred to in these statutory provisions includes only a disability which affected the injured workmen's earning capacity at the time of the subsequent industrial injury. *See Ross v. Industrial Commission*, 22 Ariz.App. 209, 526 P.2d 416 (1974), and cases cited therein. After some interim confusion created by the Arizona Supreme Court's reversal in 1975 of this court's decision in *Ross*,[2] the Arizona Supreme Court has reverted to the historically recognized interpretation that "previous disability" as used in A.R.S. § 23–1044 means a previous earning capacity disability. *See Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978).

Recognizing that the "previous disability" referred to in subsections (D) and (E) means a disability which has affected the worker's earning capacity, claimant urges that the administrative law judge erred in considering claimant's multiple sclerosis as a previous disability, because, although at the time of the industrial injury the multiple sclerosis had resulted in serious physical impairments, it had not affected his earning capacity at that time. Claimant's contention that the multiple sclerosis had not at that time resulted in an earning capacity disability is based upon the fact that at the time of the industrial injury he was still employed on a full-time basis at his regular job and salary with no indication to him that he would be terminated because of the physical impairments resulting from the multiple sclerosis. We disagree with claimant's premise that the evidence would not support a finding that the multiple sclerosis had resulted in an earning capacity disability at the time of the industrial injury.

**2.** *See Ross v. Industrial Commission,* 112 Ariz. 253, 540 P.2d 1234 (1975), vacating this court's

decision in *Ross v. Industrial Commission, supra.*

■ The administrative law judge in his decision upon review stated:

"However, the hearing introduced testimony clearly establish[ing] the very regretable fact that the defendant employer could no longer retain the applicant in the job position he was occupying [at the time of the injury] because the impairing effects of the preexisting *multiple sclerosis* were beginning to cause loss of business customers as a direct result of that *multiple sclerosis* impairment."

Although the evidence would not support a finding that a decision had actually been made to terminate claimant's employment before the occurrence of the industrial injury, it clearly supports the finding that claimant's multiple sclerosis had progressed to the point that, as stated by the administrative law judge in finding no. 8 of his initial decision "It was evident something concerning the [claimant's] employment had to be done but because [he] had been such a valued employee in the past nothing had yet been done at the time of the industrial injury." Claimant recognized the validity of this finding in his post-hearing memorandum filed with the Commission and in his opening brief filed in this court.[3] Under these circumstances, the fact that claimant was still being paid his regular salary at the time of the industrial injury would not preclude a finding that the impairments resulting from the multiple sclerosis had created an earning capacity disability at that time.

■ It is well established that the salary or wages paid to an injured workman constitutes only one of the factors to be considered in determining whether he has incurred a loss in earning capacity. *Allen v. Industrial Commission,* 87 Ariz. 56, 347 P.2d 710 (1959); *White v. Industrial Commission,* 82 Ariz. 120, 309 P.2d 250 (1957); *Lee v. Industrial Commission,* 71 Ariz. 171, 224 P.2d 1085 (1950); *Magma Copper Co. v. Industrial Commission,* 96 Ariz. 341, 395 P.2d 616 (1964). Where the earnings are the result of factors other than those relating to the actual competitive market value of the services performed by the injured workman, such as the sympathy of a benevolent employer or, in consideration of the employee's longstanding prior service, then the earnings do not reflect actual earning capacity. *See* Larson § 57.-34; *Allen v. Industrial Commission, supra; Magma Copper Co. v. Industrial Commission, supra; Yount v. Industrial Commission,* 20 Ariz.App. 527, 514 P.2d 280 (1973); *Houser v. Industrial Commission,* 15 Ariz.App. 504, 489 P.2d 878 (1971). Although the foregoing principles are normally applied in determining an employee's post-injury earning capacity, they are equally applicable in determining whether an employee has a previous earning capacity disability within the meaning of A.R.S. § 23-1044(D) and (E). *See, e.g., Yount, supra.* Therefore, in this case the administrative law judge did not err to the extent that he determined that claimant's multiple sclerosis had affected claimant's earning capacity prior to the industrial injury, and thus constituted a "previous disability" to be excluded in arriving at a determination of claimant's loss of earning capacity attributable to the industrial injury.[4]

---

3. Claimant stated in his post-hearing memorandum: "We have a previous disability, multiple sclerosis, which affects the claimant's earning capacity. * * * However, it is clear that he probably would not have been able to keep the position because of this impairment, inasmuch as there were beginning to be customer complaints and dissatisfaction with the quality of his work."

And, in his opening brief, claimant states that his continued employment at the time of the industrial injury was because "of his benevolent employer" and his long experience with that employer.

4. Although there is language in the administrative law judge's decision which strongly implies that he was of the opinion that claimant's multiple sclerosis was an earning capacity disability at the time of the industrial injury, the decision is lacking in legal analysis, and from the findings it is difficult to precisely determine the legal theory relied on by the administrative law judge. These inadequacies in the decision of the administrative law judge have led to considerable difficulty on the part of both counsel and this court in dealing with the issues presented.

Claimant also urges that if the multiple sclerosis impairments are found to have constituted a previous disability within the meaning of A.R.S. § 23–1044(E), the administrative law judge in any event failed to comply with that subsection's requirements in determining the percentage of claimant's loss of earning capacity caused by the industrial injury. We agree. A.R.S. § 23–1044(E) requires the administrative law judge to first determine the percentage of the entire present loss of earning capacity, and then deduct therefrom the percentage of the previous loss of earning capacity as it existed at the time of the industrial injury. The remaining percentage will then generally constitute the percentage of a claimant's loss of earning capacity attributable to the industrial injury.[5] Here, it is clear that in making his apportionment of the disability relating to the industrial injury the administrative law judge did not determine the percentage of the entire present loss of earning capacity, nor did he determine the percentage of the previous multiple sclerosis related disability as it existed at the time of the injury so as to be in a position to comply with A.R.S. § 23–1044(E). Instead, he ignored these statutory requirements and based his determination of claimant's loss of earning capacity on expert testimony which considered only the impairments resulting from the industrial injury. While this method of apportionment might initially appear to be a reasonable shortcut which constitutes substantial compliance with A.R.S. § 23–1044(E) in that it does completely exclude the effects of any previous earning capacity disability from the process of determining the claimant's loss of earning capacity resulting from the subsequent industrial injury, the practical effect is that such a method will quite often result in substantial prejudice to the claimant who has a previous disability. The prejudice results from the failure of the method utilized by the administrative law judge to measure the complete effect of the subsequent industrial injury on the earning capacity of the previously disabled workman. The rationale for the procedures required by A.R.S. § 23–1044(E) is based upon a recognition that in a situation involving successive disabilities, the total or complete effect of the two impairments on the worker's earning capacity does not necessarily equal the sum of the earning capacity disabilities if each is considered separately. *See Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 P.2d 396 (1935); *Allen v. Industrial Commission, supra.* For example, an initial serious impairment might well result in a 25% loss of earning capacity, and a subsequent impairment, considered separately and excluding the effect of the first impairment, might also result in only a 25% earning capacity disability. Yet, the total loss of earning capacity resulting from the impairments when considered together might well be 100%. If the apportionment procedure used by the administrative law judge in this case were applied to the above example, the loss of earning capacity award for the subsequent industrial injury would be only 25% and would fail to recognize the complete effect of the subsequent industrial injury on the worker's earning capacity. On the other hand, an application of the apportionment procedure required by the previous disability provisions of A.R.S. § 23–1044(E) would result in a loss of earning capacity award of 75%.

The respondent carrier contends that the administrative law judge's failure to apply the apportionment provisions of A.R.S. § 23–1044(E) to this case did not constitute error, citing the following language from *Moya v. Industrial Commission,* 27 Ariz. App. 659, 557 P.2d 1091 (1976):

"We therefore hold that where a condition develops independently of *and prior to* an industrial injury and the condition is not aggravated by the industrial inju-

---

**5.** Separate and apart from the requirements of A.R.S. § 23–1044(D) and (E) relating to previous disabilities, subsequent disabilities resulting from unrelated impairments occurring after the injury might develop. If such subsequent unrelated disabilities do occur, further adjustment would have to be made to determine the loss of earning capacity attributable to the industrial injury.

ry, it is not a 'previous disability' within the terms of A.R.S. § 23–1044(D)." 27 Ariz.App. at 661, 557 P.2d at 1093 (emphasis added).

Of course here claimant's multiple sclerosis did develop independently of and to some extent prior to the industrial injury, and was not aggravated by the industrial injury. To the extent that the *Moya* holding is limited to a fact situation in which the preexisting unrelated condition has not resulted in an earning capacity disability prior to the subsequent industrial injury, the holding constitutes a correct statement of *present* law.[6] We further note that *Russell v. Industrial Commission*, 23 Ariz. App. 398, 533 P.2d 706 (1975), cited by the *Moya* court in support of its holding, was issued before the Arizona Supreme Court's *Ross* opinion, and also involved preexisting physical conditions which did not result in an earning capacity disability until after the occurrence of the industrial injury. Likewise, although not expressly stated in the decision, in *Lazarin v. Industrial Commission*, 135 Ariz. 369, 661 P.2d 219 (App.1983), cited by the respondent carrier, there was no contention that the preexisting medical conditions constituted earning capacity disabilities. at the time of the subsequent industrial injury. For these reasons we conclude that *Moya* and *Lazarin* furnish no support for the carrier's argument that the provisions of A.R.S. § 23–1044(D) and (E) are inapplicable insofar as concerns any preexisting earning capacity disability which claimant might have had as a result of his multiple sclerosis.

In arriving at the foregoing conclusion we recognize that, although there are statements and findings in the administrative law judge's decision which indicate that he was of the opinion that claimant's earning capacity had been affected by the multiple sclerosis prior to the industrial injury, he did not make any express findings to that effect. Additionally, although the administrative law judge alluded to medical testimony which indicated that claimant's physical condition resulting from the multiple sclerosis had progressively worsened after the industrial injury, his decision contains no findings or legal analysis from which this court can determine whether he was of the opinion that after the industrial injury the progressive worsening of the multiple sclerosis had produced further earning capacity disability.

While it is apparent from the overall context of the administrative law judge's decision that it was his opinion that the greater part of claimant's post-injury earning capacity disability was attributable to the multiple sclerosis impairments, the lack of preciseness in his findings and legal analysis precludes any determination by this court as to whether a legally correct method of arriving at claimant's compensable loss of earning capacity was followed. Our dilemma in this regard can best be illustrated by the following examples of possible factual variations in this case.

■ If, as initially urged by claimant, it could be found that the preexisting unrelated multiple sclerosis had not created any earning capacity disability prior to the industrial injury, and that as a result of the combined effect of the preexisting impairments from the multiple sclerosis and the subsequent industrial injury the claimant thereafter became essentially unemployable, then the carrier would be responsible for the entire loss of earning capacity. *See Poitras v. R.E. Glidden Body Shop, Inc.*, 430 A.2d 1113 (Me.1981); *Gagnon's Case*, 144 Me. 131, 65 A.2d 6 (1949); *Reynolds v. Ruidoso Racing Association, Inc.*, 69 N.M. 248, 365 P.2d 671 (1961); *O'Brien v. Manchester Yarn Mills*, 95 N.H. 118, 59 A.2d 172 (1948). This responsibility would result

6. The claimant admitted in the briefs filed in *Moya* that the preexisting "blackout" condition did not constitute an earning capacity disability at the time of the subsequent industrial injury. His sole argument relating to the previous disability provisions of A.R.S. § 23–1044(D) and (E) was based on the Arizona Supreme Court's decision in *Ross v. Industrial Commission, supra*, which has since been overruled. It is questionable whether the quoted holding from *Moya* represented a correct statement of the law in effect at the time *Moya* was issued, during the interim period between *Ross* and *Alsbrooks, supra*.

from the application of the familiar principle that the employer takes his employee as he finds him. The apportionment principles of A.R.S. § 23–1044(D) and (E) would not be applicable, since there was no previous disability, and any disability which developed after the industrial injury would in legal contemplation be a proximate result of the industrial injury. *See Morrison-Knudson Company, Inc. v. Industrial Commission,* 115 Ariz. 492, 566 P.2d 293 (1977); *Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963); *Murray v. Industrial Commission,* 87 Ariz. 190, 349 P.2d 627 (1960); *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission,* 17 Ariz.App. 516, 498 P.2d 590 (1972).

A slight, but important variation in the above facts leads to a substantially different result. Assume again that the administrative law judge would find that the multiple sclerosis had not resulted in previous disability at the time of the injury, but that thereafter the preexisting unrelated condition, unaggravated by the industrial injury, by reason of natural progression became disabling in an earning capacity sense. In such event the industrial injury would not be a proximate cause of that portion of the disability attributable to the natural progression of the unrelated and unaggravated multiple sclerosis. In arriving at the employee's compensable loss of earning capacity, the administrative law judge would be required to eliminate the disabling effects of the multiple sclerosis and determine the employee's loss of earning capacity based solely on the impairments resulting from the industrial injury. *See Aluminum Company of America v. Industrial Commission,* 61 Ariz. 520, 152 P.2d 297 (1944); *Russell v. Industrial Commission,* 23 Ariz.App. 398, 533 P.2d 706 (1975); *Lazarin v. Industrial Commission,* 135 Ariz. 369, 661 P.2d 219 (App.1983).

Although there are numerous other factual variations which could be hypothesized relating to the facts presented to the administrative law judge, for the purposes of this opinion we find it necessary to discuss only one additional variation. This variation is important since, in this court's opinion, it appears to most nearly approach the administrative law judge's inarticulately stated view of the facts of this case. This variation assumes that the multiple sclerosis had resulted in an earning capacity disability at the time of the industrial injury and therefore constituted a previous disability within the meaning of A.R.S. § 23–1044(D) and (E) at that time. Also assume that after the industrial injury, the natural progression of the unaggravated multiple sclerosis resulted in an additional effect on the claimant's earning capacity, so that at the time of the hearing the claimant's total loss of earning capacity was the result of three factors: (1) the previous disability resulting from the multiple sclerosis; (2) the disability resulting from the industrial injury; and (3) the disability which developed after the industrial injury caused solely by the unaggravated natural progression of the multiple sclerosis. Applying the principles previously discussed in this opinion, the employer's responsibility would be limited by proximate cause principles to the loss of earning capacity resulting from the industrial injury, category (2) above. A.R.S. § 23–1044(E) would require the administrative law judge to first find the percentage of the entire present disability and then deduct therefrom the percentage of the previous multiple sclerosis disability as it existed at the time of the injury. The remaining percentage would then represent a combination of categories (2) and (3) above. The compensable loss of earning capacity would then be determined by eliminating the subsequent disabling effects of the multiple sclerosis so as to arrive at the disability attributable solely to the industrial injury. While this procedure may appear hopelessly complex, for the reasons previously explained in this opinion, elimination of the first step requirement imposed by A.R.S. § 23–1044(E) would generally result in an understatement of the claimant's compensable loss of earning capacity.

Since we have concluded that the award must be set aside, we need not dwell on

claimant's contention that the testimony of the carrier's employment expert failed to meet the requirements set forth in *Zimmerman v. Industrial Commission*, 137 Ariz. 578, 672 P.2d 922 (1983) and *Dean v. Industrial Commission*, 113 Ariz. 285, 551 P.2d 554 (1976). *See also; Roach v. Industrial Commission*, 137 Ariz. 510, 672 P.2d 175 (1983). Suffice it to say that we find some merit in claimant's contentions.

The award is set aside.

CONTRERAS, P.J., and GREER, J., concur.