857 P.2d 1295

**Jesus VALLE, Petitioner Employee,**

v.

**FARMERS INVESTMENT COMPANY, Respondent Employer,**

**Industrial Commission of Arizona, Respondent,**

**State Compensation Fund, Respondent Carrier.**

**No. 2 CA–IC 92–0031.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 31, 1992.

Review Denied Sept. 21, 1993.

---

* The Honorable Michael J. O'Melia, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

Les Gilbertson, Tucson, for petitioner Employee.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Peter C. Kilgard, Chief Counsel, State Compensation Fund by W. Smith Michael, Jr., Tucson, for respondent Employer and respondent Carrier.

## OPINION

DRUKE, Presiding Judge.

The facts in this workers' compensation case are undisputed. In August 1985 petitioner Jesus Valle sustained an industrial injury to his right knee. His workers' compensation claim was closed in 1986 with a 15% scheduled disability. On April 13, 1988, he petitioned to reopen the claim. On April 27 that same year he sustained a second industrial injury, this time to his left shoulder. That injury was closed in 1989 as unscheduled pursuant to *Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971),[1] with a finding of no loss of earning capacity. Valle's request for a hearing on the earning capacity determination was held in abeyance pending reclosure of the knee claim. That claim was reclosed after surgery for an artificial knee implant in May 1991 with a 50% permanent impairment.

Hearings followed at which Dr. Bruce Bingham testified that Valle suffered a 10% permanent impairment of the left up-

---

1. Although the injury was to the shoulder, which would generally be unscheduled, it was treated throughout by the parties and the Administrative Law Judge as a scheduled arm injury. This characterization remains unchallenged and is not in issue. To alleviate confusion, we will refer to the arm/shoulder injury as the "second injury."

per extremity but no work restrictions as a result of the second injury. Dr. Susan Courtney agreed that he had no work restrictions related to the second injury. Also in evidence was the report of Dr. William J. Quinlan in which he opined that Valle suffered a 50% impairment of the right lower extremity due to the first injury and would be unable to return to his work as a laborer. The parties stipulated that their respective labor market consultants would testify that "if we consider only the [second] injury, there is no loss of earning capacity. If we consider both the knee and the [second] injury, there is 100 percent loss of earning capacity."

The ALJ found that Valle has a total loss of earning capacity, but that the loss is entirely attributable to the first injury and must be apportioned out pursuant to A.R.S. § 23–1044(E). She therefore issued an award for no loss of earning capacity attributable to the second injury. The award was affirmed upon review.

In this request for special action review of the award, Valle argues that he was entitled to an award for total loss of earning capacity. For the reasons set forth below, we affirm.

■ The amount of permanent disability benefits awarded in workers' compensation cases depends on the characterization of the impairment as either "scheduled" or "unscheduled." Injuries to certain specified bodily members are "scheduled." While scheduled injuries are conclusively presumed to affect earning capacity, the benefits awarded are limited to the amounts provided in A.R.S. § 23–1044(B). Benefits for "unscheduled injuries," those which do not fall within the schedule, are awarded on the basis of the injured workers' loss of earning capacity due to the injury. A.R.S. § 23–1044(C). Where a prior industrial injury results in a scheduled disability, a second industrial injury which would otherwise be scheduled is compensated as unscheduled. *Ronquillo, supra.* The basis of this rule is "the undoubted fact that the actual loss of earning power occasioned by a combination of two or more separately scheduled injuries may be much greater than the amount reached by merely adding together the losses presumed to be caused by each of such injuries considered separately." *Ossic v. Verde Central Mines,* 46 Ariz. 176, 188, 49 P.2d 396, 401 (1935). When this occurs, the award is apportioned pursuant to A.R.S. § 23–1044(E), which provides:

> In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

The ALJ concluded that Valle had a 100% loss of earning capacity attributable to the first injury, and 0% loss of earning capacity attributable to the second injury. She therefore subtracted the percentage of the first disability (100%) from the percentage of the entire disability (100%), and concluded that Valle had no loss of earning capacity due to the second injury.

■ At the outset we encounter some difficulty with the ALJ's interpretation of the stipulation. As expressed by the ALJ in her award, the stipulation was as follows:

> The parties stipulated the testimony of the two labor market consultants, Lisa Goldman and Richard Johnson, would be that considering only the applicant's [second injury], the applicant would have no loss of earning capacity but considering the [first injury], he would have a total loss of earning capacity.

The actual stipulation, as it appears in the record, was

> if both the labor marketing consultants were called ... they would testify that if we consider only the [second] injury, there is no loss of earning capacity. If we consider *both* the [first] and the [second] injury, there is 100 percent loss of earning capacity....

(Emphasis added.) While the difference may be subtle, it is critical to the question

444

at hand. If the actual stipulation was that the 100% earning capacity loss was due to the combined effect of the two injuries, then a further determination regarding what percentage exactly was due to the previous disability is necessary. If the stipulation was as the ALJ states, her mathematics is correct. Our task initially, therefore, is to determine whether her reading of the stipulation was reasonable. We find that it is. The only medical evidence adduced at hearing supports the interpretation that the second injury in no way attributed to Valle's loss of earning capacity. If the parties had intended the stipulation to mean otherwise, it is doubtful that they would have stipulated at all without a further stipulation as to the breakdown of the degree of loss associated with each injury.

▪ Valle's primary argument appears to be that the *Ronquillo* presumption should apply equally in reverse; that is, because the second injury was scheduled, it is presumed to have caused a loss of earning capacity. We agree that the logic of the *Ronquillo* rule as stated in *Ossic, supra,* should apply equally in the reverse, namely that the combined effect of two injuries is greater than the sum of the two scheduled allowances. We also agree that if there is to be an assumption that an initial scheduled injury resulted in a loss of earning capacity regardless of whether it actually did or did not, then the assumption should apply equally to a second scheduled injury which results in no apparent loss of earning capacity. *See Cementation Co. of America, Inc. v. Industrial Commission,* 140 Ariz. 50, 680 P.2d 186 (App.1984). In fact, the schedule itself creates just such an assumption. *R.G. Roth Const. Co. v. Industrial Commission,* 126 Ariz. 147, 613 P.2d 307 (App.1980). The difficulty is how to apportion the responsibility. Surely it is not fair to saddle the carrier at the time of the second injury with a full loss of earning capacity award when the injury for which it is responsible results in no actual loss of earning capacity. Nor can we go back to the initial carrier for a contribution to a loss of earning capacity award because the characterization of that injury as scheduled is res judicata. *All Star Coach, Inc. v. Industrial Commission,* 115 Ariz. 335, 565 P.2d 515 (1977). Finally, the provisions of A.R.S. § 23–1044(E) relating to apportionment are clear: compute the percentage of the disability as a whole and deduct from it the percentage of the previous disability. Thus, in this case, the computation is as made by the ALJ: 100% minus 100% equals zero.

Valle argues, however, that in applying *R.G. Roth, supra,* as most analogous to this case, the ALJ failed to apply the percentage formula used by the court in that case. His complaint is that under the formula the ALJ used, he receives only a scheduled award whereas if the second injury had occurred first, and the first injury second, he would have received an unscheduled award.

First, we do not see how Valle is helped by *R.G. Roth.* In that case the court determined that the word "disability" contained in A.R.S. § 23–1044(E) refers to earning capacity disability and not physical disability. Applying that meaning, a 100% total earning capacity disability subtracted from a 100% earning capacity disability from the first injury, still results in zero earning capacity disability attributable to the second injury.

Second, the contention that if the order of injuries were reversed Valle would receive a total loss of earning capacity award is not necessarily true. The second injury, if it had occurred first, would have been closed unscheduled. No presumption of lost earning capacity applies if the first injury is unscheduled. *Borsh v. Industrial Commission,* 127 Ariz. 303, 620 P.2d 218 (1980). If the claim was closed unscheduled and Valle failed to prove that the impairment had a negative effect on his earning capacity at the time of a subsequent scheduled injury (here, the first injury), the second scheduled injury would not be unscheduled. *See Fremont v. Industrial Commission,* 144 Ariz. 339, 697 P.2d 1089 (1985).

Finally, to reach the result Valle seeks, we would in effect have to unschedule the

first injury. This we cannot do. That the first injury is scheduled was determined in an earlier adjudication and is res judicata. *All Star Coach Inc., supra.*

Award affirmed.

FERNANDEZ and HATHAWAY, JJ., concur.