8 P.3d 412

SPECIAL FUND DIVISION, Petitioner Party in Interest,

v.

ARIZONA DEPARTMENT OF TRANSPORTATION, Respondent Employer,

State of Arizona, DOA Risk Management, Respondent Carrier,

The Industrial Commission of Arizona, Respondent,

Allen McDonald, Respondent Employee.

No. 1 CA–IC 99–0103.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 29, 2000.

Special Fund Division By Laura L. McGrory, Assistant Chief Counsel, Phoenix, Attorney for Petitioner Party in Interest.

Janet A. Napolitano, Arizona Attorney General By Charles W. Ferris, Jr., Assistant Attorney General, Phoenix, Attorneys for Respondents Employer and Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Delaney & Melkonoff By Edgar M. Delaney, Phoenix, Attorneys for Respondent Employee.

## OPINION

ACKERMAN, Judge.

¶ 1 Petitioner ("Special Fund") seeks Rule 10 special action review of a decision of the Industrial Commission of Arizona ("Commission"). At issue is the interpretation of Arizona Revised Statutes Annotated ("A.R.S.") section 23–1044(E) (1995), which provides for apportionment of an award in cases of successive injuries. We affirm the Commission's decision.

## FACTS

¶ 2 Respondent employee ("Claimant") suffered three separate industrial injuries. The first occurred in 1988, when Claimant suffered a back injury while performing heavy-duty work. This injury caused permanent

impairment, resulting in functional limitations on lifting more than fifty pounds and twenty-five pounds repetitively. Claimant's average monthly wage for compensation purposes was deemed to be $1650 per month pursuant to the statutory maximum in effect at that time, although Claimant was actually earning about $2200 per month. *See* A.R.S. § 23–1041(E)(2) (1995). The Commission determined that Claimant had a residual capacity to earn $1133.51 per month. His lost earning capacity was therefore $516.49 ($1650.00 less $1133.51) and yielded a permanent partial disability award of $284.07 per month. *See* A.R.S. §§ 23–1044(C)–(D),—1047(A)–(C).

¶ 3 Claimant suffered a second industrial injury in 1993. The claim for this injury to his right knee was closed with a 5% permanent impairment. The injury caused no work restrictions. The responsible carrier issued a notice for scheduled disability compensation. Claimant accepted a total payment of $1017.86. *See* A.R.S. § 23–1044(B)(15), (21).[1]

¶ 4 Claimant's third injury, and the cause of the present proceedings, was another right knee injury suffered in 1996. This knee injury caused a permanent impairment, including functional limitations on using the right leg. This third injury precluded Claimant from performing the sort of labor he had been doing at the time of the injury.

¶ 5 The Commission made an initial award of $85.15 per month. Claimant protested. The employer subsequently claimed reimbursement from the Special Fund under A.R.S. § 23–1065(B). The Special Fund agreed that the scheduled award for the second injury made § 23–1065(B) applicable to this claim.

¶ 6 Claimant's protest brought this matter before an Administrative Law Judge ("ALJ") for determination pursuant to A.R.S. § 23–947(A). The ALJ determined that Claimant's average monthly wage at the time of the third injury was $1499. The ALJ then "rolled back" that amount to account for inflation since 1988. *See Charles v. Industrial Comm'n*, 25 Ariz.App. 280, 281, 542 P.2d 1160, 1161 (1975) (requiring rollback of wages to account for inflation in evaluating changes in earning capacity). The ALJ found that $1499 per month in 1996 was almost exactly equivalent in constant dollars to the $1133.51 per month in remaining earning capacity assumed in the 1988 award. Thus, Claimant's earning capacity in "constant" dollars had not changed substantially since the 1988 accident.

¶ 7 The parties stipulated that, considering all three of the injuries, Claimant had a residual capacity to earn $649.95 per month in light duties and that he therefore suffered a loss of earning capacity of $849.05 per month ($1499 less $649.95). The parties also stipulated that the appropriate compensation for an $849.05 loss of earning capacity would be $466.98. *See* A.R.S. § 23–1044(C).

¶ 8 The ALJ found that Claimant was entitled to $748.62 per month in total benefits: $284.07 for the 1988 injury, $2.43 per month in *"Roth"* credit for the 1993 injury,[2] and $464.55 for the 1996 injury.

¶ 9 The Special Fund argued that the 1988 award of $284.07 per month should also be deducted from the $464.55 award under A.R.S. § 23–1044(E). The ALJ declined to make that deduction:

> The undersigned further finds that the applicant is not receiving double compensation. He suffered a loss of earning capacity as a result of his 1988 industrial injury and was awarded $284.07 based on

---

1. The disability classification for the second injury should have been unscheduled. *See* A.R.S. § 23–1044(E); *Alsbrooks v. Industrial Comm'n*, 118 Ariz. 480, 484, 578 P.2d 159, 163 (1978) The 1993 decision, however, has become final. *See Special Fund Div., No Ins. Section v. Industrial Comm'n*, 181 Ariz. 387, 391–94, 891 P.2d 854, 858–61 (App.1995).

2. For apportionment purposes, the $1017.96 payment for the second injury needed to be ap-

portioned over Claimant's life expectancy by the method described in *R.G. Roth Constr. Co. v. Industrial Comm'n*, 126 Ariz. 147, 150, 613 P.2d 307, 310 (App.1980). The ALJ computed the *"Roth"* credit for the second injury to be $2.43 per month. Deducting this amount from the compensation amount of $466.98 left the Respondent Employer responsible for the $464.55 per month.

his ability to earn $1,133.51. This is almost exactly what he was earning on a roll back wage at the time of his October 7, 1996 industrial injury. Therefore, the applicant is entitled to additional loss of earning capacity as a result of his October 7, 1996 industrial injury. Section 23–1044(E) which requires that a previous disability be deducted from the total disability has been satisfied.

¶ 10 The Special Fund requested review and the ALJ affirmed the award upon review. The Special Fund then filed this Rule 10 Petition for Special Action. We have jurisdiction under A.R.S. § 12–120.21(A)(A) (1992); A.R.S. § 23–951(A) (1995); and Rule 10, Arizona Rules of Procedure for Special Actions.

## DISCUSSION

¶ 11 On review, we give deference to the ALJ's factual findings. *See PFS v. Industrial Comm'n,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997). We review *de novo* his legal conclusion regarding apportionment. *See id.* We conclude that, although the ALJ did not use precisely the same terminology as the statute, he made the required findings and reached the appropriate conclusion under A.R.S. § 23–1044(E).

1. *The Apportionment Statute.*

¶ 12 At issue is the interpretation of A.R.S. § 23–1044(E). That statute requires apportionment of compensation for successive injuries that result in permanent partial disability:

In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the **entire disability and deducting therefrom the percentage of the previous disability** as it existed at the time of the subsequent injury.

A.R.S. § 23–1044(E) (emphasis added).[3]

¶ 13 To trigger the apportionment statute, a claimant must be found to have a "previous disability." As used in this section, the word "disability" refers to "earnings capacity disability." *See R.G. Roth Constr. Co. v. Industrial Comm'n,* 126 Ariz. 147, 149, 613 P.2d 307, 309 (App.1980). The apportionment statute therefore applies only when a claimant has a prior condition that results in an "actual loss of earning capacity." *See W.F. Dunn, Sr. & Son v. Industrial Comm'n,* 160 Ariz. 343, 349, 773 P.2d 241, 247 (App.1989).[4] A "previous disability" may be industrial or non-industrial, scheduled or unscheduled. *See McKinney v. Industrial Comm'n,* 78 Ariz. 264, 266, 278 P.2d 887, 888 (1955) (industrial or non-industrial). To bring the apportionment statute into play, however, the disability must be permanent and must not merely aggravate a previous, non-disabling condition. *See Morrison–Knudsen Co. v. Industrial Comm'n,* 115 Ariz. 492, 495, 566 P.2d 293, 296 (1977) (no apportionment if injury aggravates a prior, non-disabling condition); *Hester v. Industrial Comm'n,* 178 Ariz. 587, 590, 875 P.2d 820, 823 (App.1993) (prior disability must be permanent to trigger apportionment statute). Here, it is undisputed that at the time of the third accident Claimant suffered from a previous disability that was permanent and had caused a loss of earning capacity.

¶ 14 If a previous disability brings a case within § 23–1044(E), the ALJ must first determine the "entire disability" suffered by the claimant. *See* A.R.S. § 23–1044(E); *Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 123, 692 P.2d 297, 302 (App.1984) ("the administrative law judge [must] first determine

---

**3.** The apportionment statute applies when a claimant has suffered two or more distinct and separate disabilities. *See Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 123, 692 P.2d 297, 302 (App.1984). In contrast, the "successive injury rule" applies where successive injuries contribute to a single disabling condition. *See Frito Lay v. Industrial Comm'n,* 196 Ariz. 134, 136, ¶ 10, 993 P.2d 1098, 1100 (App.1999).

**4.** Some injuries are conclusively presumed to be disabling in this sense. *See Pullins v. Industrial Comm'n,* 132 Ariz. 292, 295, 645 P.2d 807, 810 (1982) (pre-existing impairment of great magnitude, such as the loss of an eye or leg, is conclusively presumed to be disabling); *Ronquillo v. Industrial Comm'n,* 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971) (a scheduled industrial injury is conclusively presumed to be disabling).

the percentage of the entire present loss of earning capacity"). To find the "entire disability," the ALJ must consider the effect of all the earning capacity disabling conditions, treating them all as unscheduled. *See Ossic v. Verde Central Mines*, 46 Ariz. 176, 189, 49 P.2d 396, 402 (1935) (ALJ should find the "complete effect" of the injuries); *Ronquillo v. Industrial Comm'n*, 107 Ariz. 542, 543, 490 P.2d 423, 424 (1971) (ALJ should determine the "entire disability as it exists after the second injury, removing them from the schedule"). The injuries are treated as "unscheduled" because the combined disability produced by successive scheduled injuries may be more than the sum of the individual disabilities alone. *See Alsbrooks v. Industrial Comm'n*, 118 Ariz. 480, 483, 578 P.2d 159, 162 (1978); *Ossic*, 46 Ariz. at 189, 49 P.2d at 402; *Hoppin*, 143 Ariz. at 122–23, 692 P.2d at 301–02.

¶ 15 If appropriate, the ALJ may re-evaluate the earnings capacity effect of a prior injury at the time of the subsequent injury. *See Morris v. Industrial Comm'n*, 81 Ariz. 68, 73, 299 P.2d 652, 655 (1956) ("The language of the statute . . . plainly infers that the previous disability must be re-evaluated as of the time of the Commission award."). Although the statute speaks of "percentage of disability," the ALJ may use dollar figures for earning capacity without the formality of converting those figures into percentages. *See Roth*, 126 Ariz. at 149 n. 2, 613 P.2d at 309 n. 2.

¶ 16 Once the "entire disability" has been determined, the ALJ must "deduct[ ] therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." A.R.S. § 23–1044(E); *see also Hoppin*, 143 Ariz. at 123, 692 P.2d at 302 ("then deduct therefrom the percentage of the previous loss of earning capacity as it existed at the time of the industrial injury"). The balance of the disability is the responsibility of the current employer. *See Bozman v. Industrial Comm'n*, 20 Ariz.App. 390, 392, 513 P.2d 679, 681 (1973) ("resulting finally in the entry of an Unscheduled loss of earning capacity award for the difference"). Of course, a subsequent injury does not relieve

any prior employer of its compensation responsibility for prior injuries.

¶ 17 *Hoppin* provides an example of this statutory process:

> For example, an initial serious impairment might well result in a 25% loss of earning capacity, and a subsequent impairment, considered separately and excluding the effect of the first impairment, might also result in only a 25% earning capacity disability. Yet, the total loss of earning capacity resulting from the impairments when considered together might well be 100%. . . . [A]n application of the apportionment procedure required by the previous disability provisions of A.R.S. § 23–1044(E) would result in a loss of earning capacity award of 75%.

*Hoppin*, 143 Ariz. at 123, 692 P.2d at 302. In this example, the "entire disability" after the second injury is 100%. The statute, however, requires that the award against the second employer be computed by "deducting therefrom the percentage of previous disability" (25%). Thus, the employer at the time of the second injury would be responsible for the 75% disability caused by the second injury. If the first injury were compensable on an ongoing basis, the first employer would remain responsible for that 25% disability compensation.

¶ 18 The procedure of § 23–1044(E) determines what portion of the entire earning capacity disability is the responsibility of the current employer. The unscheduling of the injuries and the determination of the "entire disability" ensure that the cumulative effect of all injuries on the claimant's earning capacity is properly considered. The deduction of prior disabilities prevents any double recovery and limits the responsibility of the current employer to that disability caused by the current injury. Thus, unlike some states in which apportionment statutes reduce an injured workers' compensation, Arizona's statutes provide for full compensation and apportion responsibility among the respective employers. *See* 5 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 90.02, at 90–3 (2000) (discussing various types of apportionment statutes). The Legislature, however, has lessened the bur-

den on subsequent employers in Arizona by providing for contribution from the Special Fund in some cases. *See* A.R.S. § 23–1065 (Supp.1999).

¶ 19 Once the ALJ determines the amount of lost earning capacity to be attributed to the current employer under § 23–1044(E), compensation for permanent partial disability is calculated pursuant to A.R.S. § 23–1044(C). That section provides:

> In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five percent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.

¶ 20 Unlike the "entire disability" computation of § 23–1044(E), the amount of compensation is based on the "average monthly wage before the accident." Normally, that average monthly wage will already reflect the earning capacity disability caused by the prior injury. If the claimant's actual monthly wages at the time of the subsequent injury do not fairly reflect the claimant's earning capacity, the ALJ may determine the actual earning capacity. *See Hoppin,* 143 Ariz. at 122, 692 P.2d at 301. In the apportionment process, the ALJ may also reevaluate the earning capacity effect of prior injuries to make a fair apportionment. *See Morris,* 81 Ariz. at 73, 299 P.2d at 655.

### 2. *The ALJ's Analysis.*

¶ 21 The Special Fund argues that the ALJ erred as a matter of law by not deducting the 1988 award of $284.07 per month from his final award of $464.55 per month. We disagree.

¶ 22 That Special Fund mistakenly assumes that Claimant's lost earning capacity of $849.05 constitutes the "entire disability" for purposes of § 23–1044(E). Under that assumption, the Special Fund argues that the resulting award of $466.98 must be reduced by deducting the prior award of $284.07.

¶ 23 The $849.05 in lost earning capacity, however, is not Claimant's "entire disability." That figure was based on Claimant's 1996 average monthly wage of $1499. Claimant's 1996 monthly wage was already depressed as a result of the 1988 injury. The $849.05 in lost earning capacity does not include the $516.49 (in 1988 dollars) in lost earning capacity caused by the 1988 injury. It therefore represents only part of Claimant's "entire disability."

¶ 24 The ALJ did not expressly find the "entire disability" in this case, but he made an equivalent finding that Claimant was entitled to total compensation of $748.62 per month (including the *Roth* credit).[5] From the "entire disability" compensation of $748.62 per month, the ALJ properly deducted both the prior award of $248.07 per month for the 1988 injury and the *Roth* credit of $2.43 per month for the 1993 injury. Thus, the compensation attributable to both prior disabilities was deducted from the "entire disability" compensation of $748.62, precisely in compliance with A.R.S. § 23–1044(E). Because the effect of the 1988 injury was deducted once, it would have been error to follow the Special Fund's suggestion to deduct it again.

¶ 25 The method used by the ALJ in this case is fully consistent with our holding in *Hoppin.* In that case, the ALJ used a "short cut" to compute compensation by looking at an industrial injury in isolation and not in conjunction with another potentially disabling condition. *See Hoppin,* 143 Ariz. at 124–25, 692 P.2d at 303–04. We found use of that method improper because it could fail to evaluate properly the combined effect of two disabilities.

---

5. Based on the 55% compensation rate for permanent partial disabilities, the ALJ's conclusion reflects an implicit finding that the "entire disability" caused by all three injuries was $1361.13 per month ($748.62 divided by .55).

¶ 26 Here, in contrast, the ALJ gave full effect to the loss of earning capacity caused by the combined injuries. The residual earning capacity of $649.95 properly considered the effect of all three injuries. Claimant's "entire disability" was properly based on his entire loss of earning capacity: the 1988 loss of earning capacity ($516.49 in 1988 dollars) and the subsequent loss of earning capacity ($849.05).

¶ 27 Critical to the ALJ's approach in this case was the finding that Claimant's average monthly wage at the time of the subsequent injury fairly reflected Claimant's residual earning capacity from the prior injuries. Where such a finding is made, the method used by the ALJ here is appropriate.

### CONCLUSION

¶ 28 For the foregoing reasons, we affirm the award and the decision on review.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and JAMES B. SULT, Judge.