514 P.2d 280

**Otis YOUNT, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

Tucson Prestressed & Architectural Concrete Company, Inc., Respondent Employer, Globe Indemnity Company, Respondent Carrier.

**No. 1 CA–IC 848.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 25, 1973.

Rehearing Denied Oct. 30, 1973.

Review Denied Dec. 11, 1973.

Law Offices of Paul G. Rees, Jr. by Ronald D. Mercaldo, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Lesher & Scruggs, P. C. by D. Thompson Slutes, Tucson, for respondent carrier.

OPINION

DONOFRIO, Presiding Judge.

This review by certiorari questions the lawfulness of an award and findings of The Industrial Commission of Arizona determining that petitioner's preexisting permanent physical disabilities did not affect his earning capacity at the time of a subsequent industrial injury, and therefore did not constitute a basis for finding the present disability to be unscheduled rather than scheduled. See generally, A.R.S. § 23–1044.

On December 4, 1969 petitioner, Otis Yount, then approximately 58 years of age, sustained a fall and injured his major arm —the right arm—while working for respondent employer as a carpenter in the specialized field of making forms and framing for heavy concrete construction. Petitioner had engaged in this specialized type of work for 22 years. He has no skills in the field of carpentry other than this specialty. A report from Dr. H. C. Thompson III, dated May 21, 1972, states that he would not be able to return to work as a heavy construction carpenter.

The record reflects that Mr. Yount has a congenital clubfoot, and according to a report of November 4, 1971 from Dr. Blair W. Saylor, a hearing specialist, has a 45% loss of hearing in the right ear and a 40% loss in the left ear within the speech range, requiring a hearing aid. According to petitioner's own uncontradicted testimony at the May 25, 1972 hearing, this loss of hearing is such that he will require a hearing aid before the State Rehabilitation Fund will attempt to obtain work for him. These disabilities were not industrially related.

Petitioner's claim was accepted for benefits by the respondent insurance carrier in its notice of claim status issued December 19, 1969, wherein the average monthly wage was also determined to be $906.53, which wage was approved by The Industrial Commission of Arizona on September 10, 1971.

On November 4, 1971 the respondent insurance carrier issued its notice of claim status terminating the applicant's temporary compensation and medical benefits as of November 2, 1971 upon the ground that the applicant had been discharged with permanent disability.

On November 15, 1971 the respondent insurance carrier issued its notice of permanent disability finding that the applicant had sustained a 20% permanent impairment of the major arm and awarding compensation in the amount of 50% of the average monthly wage of $906.53 for twelve (12) months. On the same date, the respondent carrier also issued its amended notice of claim status terminating the applicant's temporary compensation and medical benefits as of October 20, 1971.

Petitioner timely filed a request for hearing November 24, 1971. A formal hearing was held in this matter on April 24, 1972 and a further hearing was held on May 25, 1972.

In his decision of May 31, 1972 the hearing officer found that petitioner's preexisting physical impairments existed and would themselves "have amounted to scheduled injuries had they individually been sustained in industrial accidents." The hearing officer went on to find, however:

"That the applicant's pre-existing partial loss of hearing and deformity of the left foot did not affect the earning capacity of the applicant at the time of the subject industrial injury. The aforesaid defects or impairments do not, therefore, constitute a basis for a finding of an unscheduled disability in combination with the scheduled disability resulting from the industrial injury of December 4, 1969." (Finding No. 10).

The sole issue on appeal is the propriety of the hearing officer's determination that petitioner's industrial injury should be scheduled rather than unscheduled.

▮ Generally speaking, if a workman has a prior scheduled industrially related injury, the Commission cannot ignore it when the workman suffers a second injury. Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971). If the prior injury was non-industrially related and would have been classified as a scheduled injury, as in the case at bar, there is a presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury, although the presumption can be overcome. Ronquillo, *supra*. Where the prior condition was non-industrially related the Commission must determine whether the prior condition affected the workman's earning capacity. Wollum v. Industrial Commission, 100 Ariz. 317, 414 P.2d 137 (1966), overruled in part in Ronquillo, *supra*; Woods v. Industrial Commission, 91 Ariz. 14, 368 P.2d 758 (1962); McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887 (1955).

Apparently, the only basis upon which the hearing officer determined that the Ronquillo presumption of unscheduled disability had been overcome, and no loss of earning capacity shown, was the testimony of petitioner's employer, John McGill Johnson, a contractor who has known petitioner for some 18 years. Mr. Johnson testified that he was aware of Yount's permanent hearing loss and foot deformity but that this "did not affect job performance" in his opinion. He considered him a "top hand" as a heavy construction carpenter, had seen him perform on the job, and considered him a loyal, hard worker as compared to other marginal employees. However, on cross-examination he made it very clear that in all these instances he had overlooked Mr. Yount's other disabilities because of the factors of loyalty, hard work, responsibility and trustworthiness.

In making his determination that the presumption of unscheduled disability had been overcome, the hearing officer cited the Arizona Supreme Court's decisions in Goodyear Aircraft Corp. v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715 (1961), and Wollum v. Industrial Commission, *supra*. In Goodyear Aircraft Corp. the Court held that a previous *partial loss of hearing,* not the result of an industrial

**530**

injury, could be disregarded if the evidence showed that the previous disability had no effect on earning capacity at the time of the subsequent injury. Likewise, in Wollum the Court found that the *prior loss of a fingertip* could be disregarded, and the award be scheduled, where no evidence of loss of earning capacity was shown. We find, however, that the circumstances in those cases are readily distinguishable from those in the instant case, and that these facts are more analogous to those in the McKinney and Woods cases, *supra*.

In Woods, the Court found that a previous non-industrially related injury necessitating amputation of both legs, coupled with a subsequent industrially related injury, would categorically place petitioner's case in the unscheduled class. A.R.S. § 23–1044, subsections C, D, and E.

 Likewise, in McKinney the petitioner had previously lost his leg at the age of 8 in a non-industrial accident. At the time of his industrially related injury he was gainfully employed with the use of an artificial limb. The Supreme Court concluded there that the loss of a leg was of such a nature that this alone was sufficient to show a loss of earning capacity. Thus, we believe that the extent of the prior disability is a factor in determining whether the petitioner had a loss of earning capacity at the time of the subsequent injury.

We believe that petitioner's congenital disability was of such a nature that it could not be ignored merely because his employer had elected to overlook it subjectively because of other redeeming traits and qualities which made him a valuable employee. When asked whether such a foot disability would be a negative factor in hiring a man if he were not aware of the applicant's previous years of loyalty and hard work, Johnson stated that "it certainly would." Consideration of an employer out of sympathy for an employee or because of long service does not reflect his actual earning capacity, and for purposes of determining permanent disability are to be discounted accordingly. Allen v. Industrial Commission, 87 Ariz. 56, 347 P. 2d 710 (1959).

The effect of the Commission's finding in this case is to penalize petitioner because of his employer's commendable employment policy, and for his own perseverance and fortitude in attempting to cope with and overcome his disabilities, and in making himself a productive member of society. We do not believe the award in this case properly reflects the policies and purposes of our Workmen's Compensation Act.

The record does not disclose that there was sufficient evidence produced before the hearing officer to overcome the presumption that petitioner's preexisting physical disabilities affected his earning capacity at the time of his subsequent scheduled industrial injury. We find McKinney, *supra*, controlling here, and that petitioner's permanent prior foot disability is of such a nature that it alone shows a loss of earning capacity.

The award is set aside.

OGG and STEVENS, JJ., concur.