644 P.2d 909

Anthony F. KOVACS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Lincoln Property Company, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 2476.

Court of Appeals of Arizona, Division 1, Department C.

March 18, 1982.

Rehearing Denied April 16, 1982.

Review Denied May 4, 1982.

Rabinovitz & Dix, P. C. by J. Stephen Dix and Charles G. Rehling, Tucson, for petitioner.

Robert K. Park, Chief Counsel, Phoenix, State Compensation Fund by Robert T. Wilson, Tucson, for respondent employer and respondent carrier.

Calvin Harris, Chief Counsel, Phoenix, for respondent The Industrial Com'n of Ariz.

OPINION

HAIRE, Judge.

In this review of a scheduled award entered in a workmen's compensation proceeding, the only issue raised by the petitioner-claimant is as follows:

"WAS THE ADMINISTRATIVE LAW JUDGE'S FINDING OF A SCHEDULED IMPAIRMENT, REFERABLE TO THE SEPTEMBER 26, 1978 INDUSTRIAL INJURY, SUPPORTED BY ANY REASONABLE THEORY OF THE EVIDENCE?"

We find reasonable evidence to support the administrative law judge's decision, and therefore affirm the award.

It is uncontroverted that in 1978 claimant injured his right knee in an industrial incident. The injury became stationary in Oc-

tober 1979 with a 25% fuctional loss of use of the right leg. Claimant recognizes that a residual injury of this nature would normally result in a scheduled award pursuant to A.R.S. § 23–1044B(15) and (21), but apparently contends that because of a prior back injury, the successive injury concept summarized in *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), acts to convert his present injury from a scheduled to an unscheduled classification.

■ The case law as developed by the Arizona Supreme Court in this area of Arizona's workmen's compensation law has not been characterized by extreme consistency.[1] Nevertheless, at this point in time, certain principles have been repeatedly stated, and thus would appear to be relatively settled. Thus, notwithstanding the *result* reached in *Alsbrooks*, it is still generally recognized that the *Ronquillo* presumptions (whether conclusive or rebuttable) do not apply unless the prior physical impairment has resulted from a scheduled industrial injury or constitutes an impairment which would have been scheduled if industrially related. See *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971); *Borsh v. Industrial Commission*, 127 Ariz. 303, 620 P.2d 218 (1980); *Alsbrooks v. Industrial Commission, supra; Yanez v. Industrial Commission*, 21 Ariz.App. 367, 519 P.2d 220 (1974). Since in the case presently under review, claimant does not allege a prior impairment of a scheduled nature, our analysis is based on the premise that he is not entitled to any evidentiary presumption and therefore has the burden of showing that his claimed prior physical impairment has actually resulted in a loss of earning capacity.

■ Building upon this premise, an additional principle which appears to be settled in Arizona law is that in the absence of the availability of a *Ronquillo* presumption, in order to convert a later scheduled impairment to unscheduled, evidence must be presented which permits a reasonable inference to be drawn that the loss of earning capacity resulting from the prior impairment exists "at the time of the subsequent injury." A.R.S. § 23–1044 E; *Ronquillo v. Industrial Commission, supra; Borsh v. Industrial Commission, supra; Blount v. Industrial Commission*, 19 Ariz.App. 245, 506 P.2d 285 (1973); *Yount v. Industrial Commission*, 20 Ariz.App. 527, 514 P.2d 280 (1973); *Bozman v. Industrial Commission*, 20 Ariz.App. 390, 513 P.2d 679 (1973).

With these principles in mind, we now review claimant's contentions concerning his alleged prior physical impairment and its effect on his earning capacity at the time of the subsequent injury. Claimant testified that in 1941 he injured his back while working for a Michigan employer. At that time he continued working without any substantial problems. In 1945 he was inducted into the military forces, and after serving five and one-half months, received a dependency discharge. Claimant alleges that he then returned to his pre-induction employment, and after working approximately four months, the condition resulting from his 1941 back injury became so painful that he had an operation involving a laminectomy and spinal fusion. He remained off work for approximately ten months, and then resumed work for his prior employer in a supervisory capacity. He testified that because of physical limitations, he was unable at that time to return to his work as a "screw machine set-up man". Although claimant initially testified that his earnings as a supervisor were less than his pre-operation wages, his subsequent testimony indicated that his lessened post-war earnings as a supervisor for the same employer was attributable to the fact that the job no longer involved war period overtime work.

1. Compare, for example, *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975) with *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), and note the internal inconsistencies in *Alsbrooks* between its legal analysis and ultimate disposition, bearing in mind that the "conclusive presumption" authorized in *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971) is supposedly limited to fact situations involving prior scheduled injuries of an industrial origin.

In 1947 claimant's employer moved its operations to Mississippi and closed its plant in Michigan. As a result, claimant lost his job. According to claimant's testimony, he then tried to get employment with various "big" employers in the Detroit area, but was unable to do so because upon physical examination the back operation scar would be discovered. During this period he obtained various jobs, at lesser wages than when he was working for his wartime employer. Other than the physical limitations which he had immediately after his 1945 operation while he was working in a supervisory capacity, claimant did not testify as to any actual back problems which he had during this post-war period, much less that any such problems affected his employment activities during that time. To the contrary, his testimony regarding jobs which he held during this period indicated that he was able to work on his feet, eight hours per day, 40 hours per week, lifting 80 to 90 pound iron bars and putting them in various machines as required by his employment.

Claimant's present industrial injury occurred on September 26, 1978, and there is a noticeable void in the record concerning his employment activities or any physical problems which he might have had with his back during the period extending from the late 1940's to the time of his present injury. At the hearing before the administrative law judge, in addition to the testimony summarized above, the following evidence was presented. Because of the lapse of time since the back operation in 1945, claimant's counsel avowed that he had been unable to obtain hospital or medical records relating to claimant's alleged laminectomy and spinal fusion. The only medical witness who testified concerning the alleged back impairment was Dr. R. Wayne Wood, the orthopedic surgeon who treated claimant for the 1978 scheduled injury to his knee. This doctor's testimony on the back impairment issue is accurately summarized by the administrative law judge as follows:

"The doctor was then asked by counsel for the applicant to assume all the applicant's uncorroborated testimony of a prior back injury and a discectomy with an ensuing spine fusion were facts and to look at a scar on the applicant's back and then give the A.M.A. guide impairment percentage. The doctor said the A.M.A. guide under those conditions reflected a 5% general impairment. On cross-examination however the doctor was equally clear in saying that to look at the scar as he had done gave him absolutely no more medical information than some sort of low back operative procedure had been accomplished in the past. He continued saying there was no A.M.A. guide rating for what he was able to medically determine by looking at or examining the back of this applicant on whose knee he had operated in 1978." [2]

As we have previously indicated, the only issue raised by claimant is whether the administrative law judge's entry of a scheduled award is "supported by any reasonable theory of the evidence". The carrier's response is two-pronged. The carrier urges first that there was insufficient evidence presented to show that a prior injury had occurred, and second, that if such injury did in fact occur, the evidence of loss of earning capacity due to the prior impairment was insufficient to justify treating the subsequent injury as unscheduled.

■■■ The administrative law judge's scheduled award appears to be based upon his resolution of credibility issues against claimant with a resulting conclusion that claimant failed to sustain his burden of showing a prior physical impairment.[3] Al-

2. For an explanation of the utilization of the American Medical Association's impairment rating guidelines in Arizona's workmen's compensation practice, see *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976).

3. The administrative law judge concluded as follows:

"11. The applicant has failed to carry his burden of proof to establish by a preponderance of the evidence a prior *disability* of the nature to bring into play the terms of the *Ronquillo v. Industrial Commission*, 107 Ariz.

though claimant forcefully argues that the administrative law judge erred in resolving these credibility issues against him, it is our opinion that we need not reach that issue. As is the case in our review of a judgment entered by a superior court judge, we will sustain an award entered by an administrative law judge upon any basis clearly supported by the record, notwithstanding the fact that the administrative law judge might have relied upon some other theory. *Salt River Project v. Industrial Commission*, 126 Ariz. 196, 613 P.2d 860 (App.1980). Applying that principle here, if we assume that claimant sustained an injury which resulted in the alleged 1945 surgical procedures and resulting impairment at that time, and further that the application of pertinent A.M.A. guidelines to such surgical procedures would support a finding of a residual permanent impairment of five percent without regard to any other showing of actual impairment, the fact still remains, as urged by the carrier, that the record was void of any showing of the effect of that physical impairment on claimant's earning capacity at or near the time of the subsequent injury in 1978. There is no evidence that he had any back problems whatsoever at that time. He has not testified as to any pain, any limitation of movement or any medically imposed (or even self-imposed) lifting limitations which have or would affect his earning capacity "at the time of the subsequent injury." We therefore hold that the scheduled award was the only award which could have been entered based upon the evidence submitted at the hearing.

The award is affirmed.

EUBANK, P. J., and FROEB, J., concur.

---

542, 490 P.2d 423 (1971), so as to place the instant scheduled disability in the unscheduled area of injuries." (Emphasis added). The use of the word "disability" in this context makes this finding susceptible to an interpretation that the administrative law judge actually concluded that claimant had failed to prove the existence of a loss of earning capacity disability resulting from the prior impairment at the time of the subsequent scheduled injury. *See Alsbrooks v. Industrial Commission, supra*. However, when considered in the context of other findings and conclusions contained in the administrative law judge's decision, we conclude that the judge was in fact referring to an actual physical functional impairment.