754 P.2d 1368

Jacky **BLAKE** and Rebecca Ann Blake, husband and wife, d/b/a Whitfill Nursery, Plaintiffs/Appellees,

v.

**CITY OF PHOENIX**, a political subdivision of the State of Arizona, and Board of Adjustment of the City of Phoenix, Defendants/Appellants.

No. 2 CA–CV 87–0320.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 21, 1988.

Reconsideration Denied Feb. 17, 1988.

Redesignated as Opinion and Publication Ordered March 22, 1988.

Review Denied June 21, 1988.

**94**

Wallace J. Baker, Jr., P.C., Phoenix, for plaintiffs/appellees.

Roderick G. McDougall, City Atty. by Edward P. Reeder, Phoenix, for defendants/appellants.

## OPINION

HATHAWAY, Judge.

This is an appeal from the judgment in a special action to the Superior Court of Maricopa County reversing a decision of the Board of Adjustment (board) which upheld a decision of the City of Phoenix Zoning Administrator (administrator). The administrator and board denied appellees Blake, the present landowners, a use permit to alter or expand a nonconforming use for a plant nursery in a residential neighborhood. The Blakes argue that the land is subject to a use similar to the nonconforming use in existence at the time the property was annexed by the city, and that they were therefore not required to obtain a new use permit. The administrator found that the nonconforming use had lapsed for more than a year and was followed by an illegal use; that lapse of the nonconforming use resulted in its loss pursuant to City of

Phoenix Zoning Ordinance S106(A)(2).[1] Because we find there was credible evidence to support the administrator's decision, we must sustain it and reverse the trial court's decision. *Burroughs v. Town of Paradise Valley*, 150 Ariz. 570, 724 P.2d 1239 (App. 1986).

## FACTUAL BACKGROUND

In 1959, the property in question was owned by Morris Duncan and used as a greenhouse plant nursery for orchids and other similar plants when it was annexed by the City of Phoenix and became subject to its zoning ordinances. It was then zoned residential, and its use as a greenhouse plant nursery was a nonconforming use under the city's zoning ordinance. There was testimony that the nonconforming use as a greenhouse plant nursery ceased from 1981 to 1986. When Mr. Staffos, a predecessor of the Blakes, came on the property in 1978, the greenhouses were no longer used. Mr. Staffos began a wholesale cactus nursery and planted cactus on the property. The Blakes purchased the nursery in 1986 and expanded operations to cover the entire property. Now there is constant traffic changing the character of the property.

Although the record is unclear as to whether neighbors complained or for what other reason, an inspector from the City of Phoenix Zoning Department advised Mrs. Blake that they must apply for a use permit to expand or alter a nonconforming use and a variance to eliminate the need to dustproof the parking lot. At the hearing, the Blakes requested that their application be withdrawn on the ground that no permit was required because no expansion had occurred; their request was denied. The administrator concluded that any previously existing nonconforming use had lapsed and that the owners had failed to obtain a permit to expand the nonconforming use when it was still in existence. He found that the original nonconforming use of growing orchids in the greenhouses had

been abandoned and replaced by outside sales, constituting a prohibited enlargement and requiring a use permit. The Blakes appealed the administrator's ruling to the Board of Adjustment, which upheld the findings of the administrator and ordered the Blakes to cease operation of the nursery. The Blakes then filed a special action in the superior court, which reversed the administrative decisions on the basis that they were against the "weight of the evidence." The court also found that the facts established a claim of estoppel against the city.

## NONCONFORMING USE

The city argues that the original nonconforming use, growing orchids and other plants in the three greenhouses for wholesale purposes, has lapsed and been replaced by illegal expansion of the enterprise to include extensive retail sales of outdoor plants brought onto the site. The Phoenix Zoning Ordinance provides that a nonconforming use "may continue in the manner and to the extent that it existed or was being used at the time [of annexation]." City of Phoenix Zoning Ordinance § 106(A). At the administrative proceedings, the city presented testimony by neighbors and aerial photographs in support of its argument that the original use had lapsed and had been replaced by a prohibited enlarged use. There was testimony that the original owner at the time of annexation, Mr. Duncan, ran a quiet business growing orchids in the greenhouses, involving limited sales, and that nothing was grown outside of the greenhouses. Mr. Duncan only tended the orchids at night and on weekends, delivering the flowers to his customers, florists, in a station wagon on weekends, resulting in a minimal amount of traffic and disturbance to the neighborhood. In contrast, testimony shows that the Blakes run a busy retail trade, originally open seven days a week, involving the sale of various plants and

---

**1.** § 106(A)(2) of the Zoning Ordinance provides: "No building or lot in or on which a nonconforming use is abandoned or ceases to be carried on for a period exceeding one year or is superseded by a conforming use subsequent to the enactment or amendment of this ordinance shall again be devoted to any prohibited use."

produce on the entire property. According to testimony by neighbors, there are now large trucks and tractor trailer rigs driving through the neighborhood, resulting in traffic and dust problems. One neighbor testified that a potential customer of the Blakes walked into his kitchen looking for the nursery office.

Once a nonconforming use has been abandoned, it cannot be resumed. City of Phoenix Zoning Ordinance § 106(A)(2). The city argued that the Blake's operations were a change of use, rather than a mere intensification of the original use, and in effect, constituted an abandonment of the original nonconforming use. A mere increase in volume or intensity of use does not constitute a change in use. 1 R. Anderson, American Law of Zoning § 6.38 (3rd ed. 1986). However, a use of a different kind accompanied by a drastic enlargement may create a changed use. Id. The general character of a nonconforming use is that in existence at the time of annexation. A change in the basic nature or character of that use may result in a loss of the protected nonconforming use. *Keller v. City of Bellingham*, 92 Wash.2d 726, 600 P.2d 1276 (1979).

Phoenix Zoning Ordinance § 106(A) specifies that the nonconforming use may continue in the "manner and to the extent" it existed at the time of annexation. The language of the ordinance is clear, and requires only that the administrator determine the "manner and extent" to which the nursery was used at the time of annexation. It did so. The board and administrator determined that the Blakes' retail sales and outdoor plant trade constituted a fundamental change from the original use at the time of annexation. The Blakes presented contrary evidence, including tax records, affidavits and advertisements to support their argument that the nursery had always engaged in both retail and wholesale sales, that there was no lapse in the use engaged in at the time of annexation, and thus no need to apply for another use permit for an extended use. Because of the conflicting evidence, the administrator had to determine which testimony was more credible in order to decide if the nonconforming use had indeed lapsed.

Judicial deference should be given to those charged with the responsibility of carrying out specific legislation. *Keller v. City of Bellingham,* supra. The evidence presented to the board and administrator supports a determination that the Blakes' business constituted more than a mere intensification; rather, the nature of the use expanded and changed in character to the extent that the original nonconforming use was abandoned. *Ford City Bank and Trust Co. v. Kane County,* 114 Ill.App.3d 940, 70 Ill.Dec. 448, 449 N.E.2d 577 (1983) (expanded use found where a private airport tripled the number of airplanes it accommodated); *Village of Orchard Lake v. Connor,* 124 Mich.App. 550, 335 N.W.2d 82 (1983) (expanded use found where a marina permitted docking by more than double the number of boats accommodated when the nonconforming use began); *Town of Oyster Bay v. Avalon Yacht & Cabana Club, Inc.,* 38 A.D.2d 604, 329 N.Y.S.2d 185 (1971) (expanded use found where a beach club expanded and added a year-round restaurant).

Even though the superior court has a broader authority to review administrative decisions in a special action than under ordinary certiorari, its primary purpose it to determine whether the decision was arbitrary, capricious, or an abuse of discretion. *Book Cellar, Inc. v. City of Phoenix,* 139 Ariz. 332, 678 P.2d 517 (App. 1983). The court may not intervene if there is "any" evidence to support the administrative decision, and should not weigh the evidence in making that determination. Id. We will not substitute our judgment for that of the agency if it was persuaded by the probative force of the evidence before it. We will not substitute our judgment for that of the board, even where the question is faulty or debatable and one in which we would have reached a different conclusion had we been the original arbiter of the issues raised by the application. *Mueller v. City of Phoenix,* 102 Ariz. 575, 435 P.2d 472 (1967); *Matter of Wickman,* 138 Ariz. 337, 674 P.2d 891 (App.1983). To

summarize, appellants found that the only nonconforming use in existence at the time of the annexation was that of wholesale sales from the greenhouses; that such use lapsed for more than a year; that it was followed by a busy, retail, outdoor business, requiring an additional use permit which they refused to grant based upon the residential nature of the surrounding neighborhood. We find their decisions supported in the record.

## ESTOPPEL

■ Prior to purchasing the nursery, the Blakes received a letter from the city's Zoning Enforcement Supervisor, Mr. Secrest, stating in part that the "property enjoys a nonconforming use for a plant nursery. A nonconforming use stays with the property and may transfer to a new owners [sic]." The superior court determined that because neither the administrator nor the board addressed the estoppel issue, an estoppel claim was established. In his minute entry, the trial judge stated, "[w]hat is significant about this issue [estoppel] is that neither the Zoning Administrator nor the Board of Adjustment addressed this issue." However, contrary to the trial court's findings, the transcripts of the hearing before the board indicate that the issue was indeed discussed. Further, Secrest's letter is not an assurance that the present use was exactly the same as the original nonconforming use; rather, it appears that he was explaining the general rule that a nonconforming use remains with the land upon its transfer and that his records indicated that the land enjoyed a nonconforming use. We believe appellant's rejection of claimed estoppel is supported by the record.

We reverse the decision of the superior court and reinstate the decision of the Board of Adjustment.

LACAGNINA, C.J., and HOWARD, P.J., concur.