789 P.2d 1072

**Amos MURPHY and Connie Murphy, husband and wife, Plaintiffs–Appellees,**

v.

**TOWN OF CHINO VALLEY, a political subdivision of the State of Arizona, Defendant–Appellant.**

No. 1 CA–CV 88–012.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 31, 1989.

Reconsideration Denied Jan. 12, 1990.

Review Denied May 1, 1990.*

---

* Gordon, C.J., of the Supreme Court, was not present and did not participate in the determination of this matter.

**572**

Stan A. Lehman, Prescott, and Paul G. Ulrich, P.C., Phoenix, for defendant-appellant.

Toci, Murphy, Lutey & Beck by Thelton D. Beck, Prescott, for plaintiffs-appellees.

## OPINION

VOSS, Judge.

This is an appeal from summary judgment in superior court reversing a zoning decision of the Town of Chino Valley Board of Adjustments (the board). We reverse and remand for reinstatement of the board's decision.

## FACTS

Amos and Connie Murphy own a residence and land in the Town of Chino Valley. In 1984 the zoning on their property was changed from agricultural to R-1 residential as part of a new zoning code adopted by Chino Valley. Over a period of time, the Murphys built a roping arena on their property that was used by their family and friends for riding horses and roping cattle. The arena has a corral, cattle runs, release shoots and seven 30'-40' poles with high intensity lights. The number of people participating at roping events was estimated to vary from 6-7 to as many as 120.

In 1985 Chuck Hudson, an adjacent property owner, complained to the town manager/zoning administrator, that the Murphys' roping arena did not comply with Chino Valley's zoning code. Acting on the complaint, the zoning administrator inquired into whether the facility was in operation prior to the adoption of the 1984 code. Many responses were received, including 28 statements indicating the arena had been utilized by family and friends before 1984. At the conclusion of the inquiry the zoning administrator wrote a letter to Hudson advising him she had concluded that the roping arena was in operation under the former zoning code and was therefore "grandfathered in" under the current code. She advised Hudson that he could appeal her decision to the board.

Hudson filed a notice of appeal of the zoning administrator's decision to the board. The appeal was considered at a special board meeting. The board heard testimony from approximately 17 witnesses, including Hudson and the Murphys. The meeting was tape recorded, but the tape ended before completion of the public hearing and prior to the board's decision. The board voted unanimously to require the Murphys to apply for a conditional use permit.

Thereafter, the Murphys filed a petition for special action in superior court requesting review of the board's decision. Cross motions for summary judgment were filed by both Chino Valley and the Murphys. The trial court granted the Murphys' motion, finding that the roping arena had been in existence before the enactment of the 1984 zoning ordinance and was a permitted use under the prior zoning ordinance. It declined to decide whether the arena could exist under the new code except as a legal nonconforming use. The court entered an order reversing the decision of the board, reinstating the ruling of the zoning administrator and awarding attorney's fees against the town for $14,487 plus costs.

## JURISDICTIONAL ISSUES

### Jurisdiction of the Trial Court

■ Chino Valley contends the trial court lacked jurisdiction to hear the special action because Hudson was the real party in interest and was not joined as a defendant. First, Chino Valley compares the board proceeding to a judicial proceeding in which the board acted as the judge resolving a dispute between two parties and contends that Rule 2, Rules of Procedure for Special Actions, applies to this situation and requires that Hudson be joined as a defendant. Rule 2 provides:

> (a) [Parties]. Any person who previously could institute an application for a writ of mandamus, prohibition, or certiorari may institute proceedings for a special action. The complaint shall join as a defendant the body, officer, or person against whom relief is sought. If any public body, tribunal, or officer is named as a defendant, the real party or parties in interest shall also be joined as defendants.

It is clear under Rule 2 that where a party to a judicial proceeding files a special action to challenge a trial judge's determination that favors the opposing party, the opposing party must be joined as a defendant. See generally 1 Arizona Appellate Handbook, § 7.5.1 at 7–9 (2d ed. 1983). Cf. Silver v. Rose, 135 Ariz. 339, 343, 661 P.2d 189, 193 (App.1982). The trial judge must

also be made a respondent. See Hickox v. Superior Court In and For Maricopa County, 19 Ariz.App. 195, 505 P.2d 1086 (1973).

■ A trial judge is expected to be impartial rather than assume an adversary position in a special action. See Dunn v. Superior Court In and For Maricopa County, 160 Ariz. 311, 772 P.2d 1164 (App. 1989). A board of adjustment, however, must regulate land use, which may place it in an adversary position to one of the parties appearing before it. Thus, this action is not comparable to the type of judicial proceeding contemplated by Rule 2. The record in this appeal supports the conclusion that the board assumed an adversary position in these proceedings; therefore the board is a real party in interest, properly before the court in this matter.

Chino Valley also points out that where one of two parties to a controversy in a hearing before the Registrar of Contractors brings an appeal to superior court under the Administrative Review Act, A.R.S. § 12–901 et seq., failure to join the opposing party deprives the trial court of jurisdiction. International Brotherhood of Electrical Workers v. Kayetan, 119 Ariz. 508, 581 P.2d 1158 (App.1978). Chino Valley argues by analogy that the parties to a dispute before a municipal body are necessary parties to a special action under A.R.S. § 9–462.06(K).

This analogy also fails because the board is not a neutral arbitrator and is acting to protect Hudson's interest. This court held in a similar context that an administrative agency can be an aggrieved party with standing to challenge an adverse ruling of the Superior Court. Burrows v. Taylor, 129 Ariz. 212, 630 P.2d 35 (App.1981).

We have found a limited number of cases concerning whether a party who complains to a board of adjustment may also be a real party in interest. See generally 3 Rathkopf, The Law of Zoning and Planning § 42.05 (4th ed. 1988). The following cases hold that objecting land owners are not necessary or indispensable parties: Peoples Trust Company v. Board of Adjustment, 60 N.J.Super. 569, 160 A.2d 63 (1959) (It

might interfere with free and open discussion before boards if property owners, by participating, risked being parties to subsequent judicial proceedings); *Nepi v. Lammot*, 52 Del. 281, 156 A.2d 413 (1959). The cases indicate that the only indispensable party to an appeal from a board of adjustment's decision is the board of adjustment. *Id; Zoning Board of Adjustment of New Castle County v. Dragon Run Terrace, Inc.*, 59 Del. 175, 216 A.2d 146 (1965); *see also Tazza v. Planning and Zoning Commission*, 164 Conn. 187, 319 A.2d 393 (1972) (The zoning commission is the proper party to represent the public interest and to defend its decisions).

■ We agree that on an appeal or special action review of a board of adjustment decision, the board and the property owner directly subject to the board decision are necessary parties. Merely taking a position before the board as an abutting landowner or neighbor does not per se make one a party to further litigation. The board represents the interests of the community at large. Further, the fact a complainant is not an indispensable party does not effect standing to intervene. There could be facts under which a complainant's interest in the outcome require that he be made a party. However, that case is not before us. We conclude the trial court had jurisdiction to consider the Murphys' petition for special action relief.

*Jurisdiction of the Court of Appeals*

■ The Murphys argue that this court must dismiss Chino Valley's appeal because it is not an "aggrieved party" within the meaning of Rule 1, Arizona Rules of Civil Appellate Procedure. We find no merit to this argument. If for no other reason than the award of attorney's fees directed against the Town of Chino Valley, the town is an aggrieved party entitled to appeal this award. Further, the town has a legitimate interest in sustaining the validity of the procedures leading to the board's decision, as well as the decision itself, which gives it standing to appear in this court. *See Dunn*, 160 Ariz. 311, 772 P.2d 1164 (App. 1989); *Camelback Contractors, Inc. v. In-*

*dustrial Commission*, 125 Ariz. 205, 608 P.2d 782 (App.1980).

## STANDARD OF REVIEW

In a special action to review a municipal board of adjustment decision, the trial court's primary purpose is to determine whether the board's decision was arbitrary and capricious or an abuse of discretion. *Blake v. City of Phoenix*, 157 Ariz. 93, 754 P.2d 1368 (App.1988). An appellate court is bound by the same standard of review as the superior court in reviewing the board's decision. *City of Phoenix v. Superior Court In and For Maricopa County*, 110 Ariz. 155, 158, 515 P.2d 1175, 1178 (1973); *Gannett Outdoor Company v. City of Mesa*, 159 Ariz. 459, 768 P.2d 191 (App. 1989). Our review is limited to finding error, and we may not substitute our opinion of facts for that of the board. If there is credible evidence to support the board's decision, we must affirm. *Id.* However, where the issues involve statutory interpretation, the trial court and this court are free to draw their own conclusions on whether an agency misinterpreted the law. *Eshelman v. Blubaum*, 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977).

## BASIS FOR THE TRIAL COURT'S DECISION

Chino Valley contends the trial court ruled that the board erred in holding a *de novo* hearing and considering evidence that had not been presented to the zoning administrator. The Murphys argue that this was not the basis for the trial court's decision. They contend the trial court held that the board's decision was erroneous because it was contrary to the evidence presented at the board's evidentiary hearing.

The trial court's minute entry provides in part:

The Board of Adjustments did not reverse, affirm or modify the order of the Zoning Administrator but apparently made a determination based upon a *de novo* proceeding. *This appears to be improper procedure under the applicable statute* but in any event, the action of

the Board of Adjustments is clearly arbitrary, capricious and an abuse of discretion and the decision of the Board may not stand.

(Emphasis added.)

█ We agree that the trial court was incorrect in concluding that the board was without authority to conduct an evidentiary hearing; the board has authority under A.R.S. § 9–462.06(A), (B), (C), (F) and (G) to conduct a public hearing and take evidence. *See, e.g., Boyce v. City of Scottsdale,* 157 Ariz. 265, 756 P.2d 934 (App.1988); *Arkules v. Board of Adjustment of Town of Paradise Valley,* 151 Ariz. 438, 440, 728 P.2d 657, 659 (App.1986) ("The Board of Adjustment, though structured much like an administrative agency, acts in a quasi-judicial capacity"). However, the trial court's statement that the board followed improper procedures was not the basis for its judgment. The minute entry implies that irrespective of any improper procedure, the court found that the board's action, after consideration of the evidence, was arbitrary, capricious and an abuse of discretion. Additionally, the trial judge later expressly stated he did not base his decision upon grounds that the town had followed improper procedures.

We therefore review the record to determine whether the trial court was correct in determining that the board acted in an arbitrary and capricious manner and abused its discretion, or whether there was sufficient evidence to support the board's decision.

## THE RECORD

Although there are difficulties with the tape recording of the board proceedings, both Chino Valley and the Murphys agree that the record is adequate for purposes of this appeal. The test for the sufficiency of an administrative record is "whether the errors are of such magnitude that the record precludes an intelligent understanding of the testimony." *Schmitz v. Arizona State Bd. of Dental Examiners,* 141 Ariz. 37, 40–41, 684 P.2d 918, 921–22 (App.1984). Although not all the board's deliberations are in the record, we are able to review the testimony to determine

whether there is sufficient evidence to support the board's decision under any legal theory. *Kovacs v. Industrial Commission of Arizona,* 132 Ariz. 173, 176, 644 P.2d 909, 912 (App.1982).

## FORMER ZONING ORDINANCE

Chino Valley's former zoning ordinance, Ordinance No. 10, provided for agricultural districts as follows:

4. Agriculture One

   (a) Permitted Uses:

      (1) All types of agriculture, truck gardening, horticulture, dairying, stock animal and poultry raising, breeding, processing and selling.

      (2) Homes for owners of ranch or farm and employees

      (3) Sale of farm produce and crops

      (4) Other uses that are not listed under conditional uses which the Board of Adjustment considers similar in character to those listed above

   (b) Conditional Uses:

      (1) Boarding homes for children

      (2) Day care homes for children

      (3) Airports and landing strips

      (4) Other uses the Board of Adjustment considers similar in character to those listed above

A roping arena, where the owners and numerous others participate in competitive roping, lighted by high intensity lights on 30–40 foot poles, is not expressly within the scope of any of the listed uses in 4(a)(1), (2) or (3). If the roping arena is to be considered a permitted use, it must come within the provisions of paragraph 4(a)(4)—uses that the board considers similar in character to the listed uses.

The doctrine of accessory uses states that any activity naturally adjunct to the zoning category will be permitted:

'[C]ustomarily' ... is commonly used in regulations permitting or defining accessory usages and the courts have sought to determine, in the case of each allegedly accessory or incidental usage, whether it is customary to maintain it in

conjunction with the specifically permitted use of the land....

*Town of Paradise Valley v. Lindberg,* 27 Ariz.App. 70, 71, 551 P.2d 60, 61 (1976).

We find no Arizona cases specifically addressing the question of accessory agricultural uses. Chino Valley relies on *Borough of Demarest v. Heck,* 84 N.J.Super. 100, 201 A.2d 75 (App.Div.1964). In *Heck* the New Jersey court held that a riding academy was not an agricultural use, referring to testimony of:

> [A]nnoying dust, 'terrific' when there is 'violent riding'; disturbing noises caused by the horses, also by children 'hollering' and 'screaming' and by the blowing of automobile horns; illumination of the barns and excessive light from cars at nighttime; traffic congestion and hazards in the evenings and on Saturdays and Sundays; ... and weekend equestrian functions which were likened to a rodeo.

*Id.* at 104, 201 A.2d at 77–78. Activity of this nature was held inconsistent with agricultural use of the property.

In response, the Murphys argue that Arizona is not New Jersey. While this response is factually indisputable, it fails to address the legal argument. It does, however, point out the difficulties in resolving mixed issues of fact and law. To a large extent what is an accessory agricultural use as a matter of law may depend on factual determinations of what is customary in a particular agricultural community. It is therefore appropriate that a determination of whether a use is "similar in character" to other express uses rests with a local board of adjustment. A local board of adjustment is the body most aware of community customs and practices and therefore best able to make this decision.

Although the board did not make a specific factual finding, the record indicates that a substantial portion of the testimony and discussion among board members was directed to whether the roping arena was an agricultural use, and, that the board's collective decision was that the roping arena was not an activity "similar in charac-ter" to the permitted uses delineated in the old code.

■ There are sufficient facts in the record from which the board could determine that the roping arena was not an accessory agricultural use. The Murphys and invited friends engaged in competitive cattle roping in the arena. These activities were conducted both in the daytime and in the evening under high intensity lighting. The extent of the impact of this activity on the neighborhood was disputed, but there was evidence that these events were noisy and increased traffic. Nothing in the record indicates that these activities were part of the operation of the Murphys' ranch.

Even if this court were to determine that the roping arena as originally constructed and used complied with Ordinance 10 before 1984, the board heard substantial evidence that the original use expanded beyond that permitted under the old ordinance and therefore could not continue as a legal nonconforming use under the new zoning code. There is, of course, evidence to the contrary. However, in reviewing a board decision it is not the prerogative of this court nor of the trial court to weigh the evidence. *Blake,* 157 Ariz. at 96, 754 P.2d at 1371.

We find there is sufficient credible evidence to support a board decision that the roping arena was not permitted under the old code and is therefore not a legal nonconforming use under the new code. Whether it was initially a permitted use before the lighting, facilities and numbers of participants expanded is irrelevant. The board's decision was that the arena as used in 1985 would require a conditional use permit. The record supports this conclusion.

## NEW CODE

The Murphys' property presently falls within an "R-1" zone under section 504 of the zoning code, which provides in part:

A. PURPOSE

    This district is intended to promote and preserve low density single family resi-

dential and agricultural development. Regulations and property development standards are designed to protect the single family residential and agricultural character of the district and to prohibit all incompatible activities. Land use is composed chiefly of individual homes, together with required recreational, religious, and educational facilities.

Section 504(B) lists permitted uses of "R–1" property, some of which the Murphys contend include the roping arena.

B. PERMITTED USES

.    .    .    .    .

3. Farming and agriculture including the keeping of cattle, horses....

4. Customary accessory buildings such as barns, corrals, pens, coops, and storage sheds for the care and keeping of animals....

5. Accessory uses as follows:

a. Parking of vehicles in facilities and locations on the property not otherwise in conflict with the provisions of this Ordinance;

b. Materials used in conjunction with a hobby, avocation, or pastime, the use of which does not otherwise conflict with the provisions of this Ordinance.

The Murphys argue that although the ordinance does not expressly refer to "roping arenas," it does expressly permit residents to keep cattle and horses, and, therefore, the ordinance implicitly authorizes riding horses or roping cattle. The Murphys further contend that their chutes and arenas qualify as "customary accessory buildings" as described in paragraph 4 above. Finally, they contend that if the roping arena does not fall within the permitted uses, it should be included as an accessory use pursuant to paragraph 5 because the roping arena is the Murphys' "hobby, avocation, or pastime."

■ The Murphys urge that their interpretation of the ordinance is consistent with the policy that zoning ordinances, being in derogation of common-law property rights, should be strictly construed and any ambiguity or uncertainty should be decided in favor of property owners. *Hart v. Bayless Inv. & Trading Co.*, 86 Ariz. 379, 390, 346 P.2d 1101, 1109 (1959). However, we find that the alleged ambiguity does not exist because the Murphys' use of the property falls under another section of the zoning code, which, as the board found, requires a conditional use permit. That section, 504(C), provides in part:

C. CONDITIONAL USES

(Conditional Use Permit Required)

1. Privately owned and operated parks and *recreation areas and centers.*

(Emphasis added.)

"Recreation Facilities" are defined in § 201 of the 1984 zoning code as:

buildings, structures or areas built or developed for purposes of entertaining, exercising, or observing various activities participated in either actively or passively by individuals or organized groups.

It was undisputed that in addition to the Murphy family, the roping arena was being used by numerous other persons who organized, participated and engaged in rodeo type activities. These activities may be reasonably viewed as utilizing the roping arena as a recreation area rather than as a family hobby. Further, there is no evidence that these competitive activities were necessary for keeping cattle and horses as part of a farm and agricultural use.

We find no error in the board's decision requiring a conditional use permit for the operation of a roping arena under these circumstances. That decision is consistent with the purpose stated in section 504 of the zoning ordinance and is a permissible use of reasonable regulations to promote the general welfare of the community as part of its police powers. *See Ranch 57 v. Yuma*, 152 Ariz. 218, 731 P.2d 113 (App. 1986).

CONSTITUTIONAL ISSUES

■ The Murphys have also raised several constitutional issues, some of which are raised for the first time on appeal.

Generally, matters not raised below, including constitutional issues, will not be considered on appeal. *Norcor of America v. Southern Arizona Int'l Livestock Ass'n,* 122 Ariz. 542, 544–45, 596 P.2d 377, 379–80 (App.1979). The issues raised by the Murphys do not fall within any exception to that policy. Therefore, we address only those issues raised before the trial court.

█ The Murphys contend they were deprived of due process of law because they were not given adequate notice of the charges against them or the evidence upon which the charges were based. They also claim they were denied an impartial tribunal and a chance to present witnesses and refute adverse evidence. *See McClanahan v. Cochise College,* 25 Ariz.App. 13, 18, 540 P.2d 744, 749 (1975). The Murphys' description of their circumstances does not accurately reflect the record.

Hudson's initial complaint to the zoning administrator necessarily raised the issue of the legality of the Murphys' arena. Many letters were submitted to the zoning administrator on the Murphys' behalf, some of which indicate they were written at the Murphys' request. Hudson's appeal of the zoning administrator's decision necessarily concerned operation of the Murphys' roping arena. The record is silent as to any formal notice given to the Murphys prior to the board hearing. However, the transcript of that meeting confirms that a number of witnesses testified on their behalf, that the Murphys were present and participated in the hearing, and that they made no complaint as to any lack of notice or insufficiency of opportunity to be heard. The trial court record is similarly devoid of any complaints by the Murphys. Accordingly, any applicable due process concerns were satisfied. *See Summit Properties, Inc. v. Wilson,* 26 Ariz.App. 550, 550 P.2d 104 (1976).

█ The Murphys also contend that by limiting their use of the roping arena, Chino Valley has eliminated a legal nonconforming use without payment of just compensation through purchase or condemnation as required under A.R.S. § 9–462.02 and Arizona Constitution, art. 2, § 17. As previously discussed, there was sufficient evidence that the roping arena as used at the time of the hearing was not a legal nonconforming use because these activities would not have been permitted under the old code. Accordingly, the roping arena as used at the time of the hearing was not a lawful preexisting use for which compensation had to be paid.

### CONCLUSION

This matter is reversed and remanded to the trial court with directions to enter judgment in favor of Chino Valley and reinstate the decision of the board of adjustment. Because we reverse, the trial court's award of attorney's fees against the Town of Chino Valley is vacated.

CONTRERAS, P.J., and
KLEINSCHMIDT, J., concur.